FILED IN THE ALASKA TRIAL COURTS ON 3/19/2026

Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 90844
Anchorage, AK 99509
(907) 830-1385
(800) 536-1071 facsimile
E-mail: *izorea.law@gmail.com*

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| Kayelani R. Grey, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3AN-26- 05590 CI |
| State of Alaska; Department of Health, Division of Public Assistance, | ) |
| Defendant. | ) |

## COMPLAINT FOR DAMAGES
Refiled

COMES NOW, Kayelani R. Grey, the plaintiff above named, by and through her attorney, Isaac Derek Zorea, and for her complaint against the above-named defendant respectfully alleges as follows:

### I. JURISDICTION

1.1. At all relevant times, plaintiff, Kayelani R. Grey, resided within the Third Judicial District, State of Alaska, in Anchorage, AK 99504-2208.

1.2. At all relevant times, defendant, State of Alaska, Department of Health, Division of Public Assistance, has maintained its business operations in Anchorage, Alaska, within the Third Judicial District, State of Alaska, including at the University Center located at 4001 Ingra Street, Suite 131, Anchorage, Alaska 99503.

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE*

PAGE - 1 -

1.3. Venue is proper in the Third Judicial District at Anchorage pursuant to Alaska Civil Rule 3(c) as the defendant conducts business in Anchorage and the events giving rise to this action occurred in Anchorage, Alaska.

1.4. This Court has jurisdiction over this matter as it involves claims arising under Alaska state law, including the Alaska Civil Rights Act, federal law including the Family and Medical Leave Act, and the amount in controversy exceeds the jurisdictional minimum of this Court.

## II. FACTS

2.1. Plaintiff Kayelani R. Grey began her employment with defendant State of Alaska, Department of Health, Division of Public Assistance (DOH-DPA) by at least October 2019, initially as an Office Assistant II and later promoted to Eligibility Technician I. Ms. Grey worked at the University Center located at 4001 Ingra Street, Suite 131, Anchorage, Alaska 99503.

2.2. Ms. Grey is a Samoan woman and Alaska Native (Dena'ina) for whom English is a second language. Throughout her employment, Ms. Grey consistently worked extensive overtime hours, regularly working 75+ hours per week, and progressed in her pay from $1,288.50 bi-weekly in 2019 to an hourly rate of $25.49 by the time of her termination.

2.3. During her employment, Ms. Grey maintained a work schedule of 9:00am to 5:30pm for approximately 3-4 years. Ms. Grey was represented by ASEA/AFSCME Local 52 and worked under various supervisors including Jonathan D. Campbell/Huntington, Heather B. Williams/Wiinikka, Jessica A. Ceesay, and Linda M. Coger.

2.4. On March 2, 2022, Ms. Grey sent a comprehensive email to management alleging discrimination and favoritism in acting position assignments,

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE*

PAGE - 2 -

expressing concerns about unequal treatment based on race and other protected characteristics.

2.5. In 2023, Ms. Grey enrolled in a 2-year Potter's House School of Ministry program that required her attendance at Tuesday classes at 4:00 PM Alaska time. Ms. Grey had previously received approval from supervisor Arianne at the Muldoon office for similar bible classes, which she described as necessary for her mental health and emotional well-being following the end of an 8-year relationship.

2.6. When Ms. Grey was transferred to new supervision, her religious accommodation was questioned and ultimately denied. On May 9, 2023, Ms. Grey left work early without supervisor approval to attend her religious classes, stating that the classes were "needed for my mental health" and "more important to me, mentally, than being here."

2.7. On May 12, 2023, when confronted about her unauthorized departure, Ms. Grey responded confrontationally to management, stating "Don't you dare come at me with your disciplinary action or whatever!" and "DPA business need is not my problem."

2.8. On May 15, 2023, management formally denied Ms. Grey's ongoing request for Tuesday schedule accommodation, citing "business needs" as the reason for denial, despite her previous approval for similar religious activities.

2.9. On May 18, 2023, Ms. Grey received a Letter of Instruction as the first step in progressive discipline, marking the beginning of an escalating pattern of disciplinary actions that would continue throughout the remainder of her employment.

2.10. On June 14, 2023, Ms. Grey sent threatening emails to management including statements such as "no one in your workflow leadership should be feeling safe at the moment" and "I will go down fighting, and you all are coming with me!"

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE*

PAGE - 3 -

2.11. On August 22, 2023, Ms. Grey received a Letter of Suspension for 2 days for unprofessional emails, unauthorized leave, and overtime violations. Around this same time, Ms. Grey began experiencing unauthorized leave without pay (UNLWOP) and was subjected to disciplinary leave without pay (DISC LWOP) on September 6-7, 2023.

2.12. In October 2023, Ms. Grey's overtime was suspended effective October 2, 2023, despite her history of working 75+ hours per week. Ms. Grey also experienced changes to her work schedule from her long-held 9:00am-5:30pm schedule to 8:30am-5:00pm.

2.13. On October 25, 2023, Ms. Grey obtained a doctor's note from Anchorage Women's Clinic stating she needed "7-10 days accommodation each month for a diagnosed medical condition. This may require several bathroom breaks throughout the day, and patient controlled stress environment." Ms. Grey specifically requested accommodation to not be assigned to lobby duty 7-10 days per month due to heavy menstrual bleeding.

2.14. On October 26, 2023, Ms. Grey received a Letter of Suspension for 5 days for continued tardiness and inappropriate communication, demonstrating the ongoing escalation of disciplinary measures.

2.15. On November 6, 2023, HR representative Megan Patterson denied Ms. Grey's medical accommodation request, stating "Lobby assignment is an essential job function of your position. Essential job functions cannot be removed or eliminated from a position as a reasonable accommodation."

2.16. On November 20, 2023, Ms. Grey was involved in a security incident where she allegedly pushed past a security guard after forgetting her key card, which later became the subject of additional disciplinary action.

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE*

PAGE - 4 -

2.17. On November 21, 2023, Ms. Grey formally alleged discrimination "on all levels of the discrimination act, because of my race, color, religion, national origin and being female." She specifically claimed racial discrimination, stating "I witness favoring of a certain race and color of people, over the rest... Leadership has all the grace to show people with same skin color as them, but none for anyone darker."

2.18. Ms. Grey also alleged electronic harassment and surveillance, claiming "Leadership also have been harassing me electronically, remote accessing my computer, reading through my emails and team messages" and that security guards were given "instructions to watch what I do closely."

2.19. On January 4, 2024, when confronted about her chronic tardiness, Ms. Grey stated "I'm always late, and with what I am going through, I don't see it changing. Most of the time why I'm late I lay in my bed and contemplate whether I wanna be here at work or not."

2.20. On January 17, 2024, Ms. Grey received a Letter of Suspension for 10 days related to the November 20, 2023 security guard incident, continuing the pattern of escalating discipline.

2.21. On February 12, 2024, Ms. Grey submitted a FMLA request for intermittent leave for a serious health condition, but failed to submit the required FMLA certification form by the May 7, 2024 deadline.

2.22. On February 13, 2024, Ms. Grey called supervisor Jessica Ceesay "Hitler" in an email, further deteriorating her relationship with management.

2.23. On March 7, 2024, Ms. Grey received a Letter of Suspension for 30 days for inappropriate communication including calling her supervisor "Hitler" and continued tardiness (19 times since September 26, 2023). Her last day of paid work was approximately March 17, 2024.

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE*

PAGE - 5 -

2.24. On April 19, 2024, Ms. Grey referred to her supervisor "with an expletive" and raised her voice "to an inappropriate volume which disturbed nearby coworkers," demonstrating continued workplace conflicts.

2.25. On May 24, 2024, the final incident occurred involving "behavior and statements that were perceived as threats to the safety of staff," which resulted in Ms. Grey's termination and a subsequent 12-month ban from DPA facilities issued on July 16, 2024.

2.26. Throughout this period, Ms. Grey reported significant financial hardship, stating "I got no money in the bank, $1 in my AlaskaUSA account, $1 in my credit union account" and "I have no home, I lost that last year," while describing herself as "at my desk crying, depressed and confused."

2.27. Ms. Grey maintains that "None of the employees here, and I mean none, is going through what I am going through" and that she was treated as a "2nd class citizen" due to her race, religion, national origin, gender, and disability status in violation of Alaska's Civil Rights Act.

## III. CAUSES OF ACTION

### A. VIOLATION OF ALASKA CIVIL RIGHTS ACT - RELIGIOUS DISCRIMINATION

3.1. Plaintiff Kayelani R. Grey incorporates all the facts and allegations within the paragraphs listed above, 2.1 through 2.27.

3.2. Plaintiff Ms. Grey affirms and attests that during the relevant time of her employment with defendant, she was satisfactorily performing the key elements of her job as an Eligibility Technician I.

3.3. Plaintiff Ms. Grey further attests and affirms that she requested reasonable religious accommodation to attend Tuesday bible classes at 4:00 PM

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE*

Alaska time as part of her enrollment in Potter's House School of Ministry, which she described as necessary for her mental health and spiritual well-being following personal difficulties.

3.4. Despite Ms. Grey's previous approval for similar religious activities and her sincere religious beliefs, defendant denied her request for religious accommodation, citing "business needs" without engaging in the interactive process required under Alaska Civil Rights Act AS 18.80.220(a).

3.5. Defendant's denial of plaintiff's religious accommodation request constituted unlawful discrimination based on religion in violation of Alaska Civil Rights Act AS 18.80.220(a).

## B. VIOLATION OF ALASKA CIVIL RIGHTS ACT - DISABILITY DISCRIMINATION

3.6. Plaintiff Ms. Grey attests that she suffers from a diagnosed medical condition requiring accommodation, as documented by her physician's note dated October 25, 2023, which stated she needed "7-10 days accommodation each month for a diagnosed medical condition."

3.7. Plaintiff requested reasonable accommodation to not be assigned to lobby duty 7-10 days per month due to her medical condition involving heavy menstrual bleeding and need for frequent bathroom breaks and a patient controlled stress environment.

3.8. Despite the medical documentation and reasonable nature of the requested accommodation, defendant's HR representative Megan Patterson denied the accommodation on November 6, 2023, claiming lobby assignment was an "essential job function" without engaging in the interactive process or considering alternative accommodations.

3.9.  Defendant's denial of plaintiff's disability accommodation request constituted unlawful discrimination based on disability in violation of Alaska Civil Rights Act AS 18.80.220(a).

## C.  VIOLATION OF ALASKA CIVIL RIGHTS ACT - RACIAL DISCRIMINATION

3.10.  Plaintiff Ms. Grey, a Samoan woman and Alaska Native (Dena'ina), was subjected to differential treatment based on her race and color throughout her employment with defendant.

3.11.  As plaintiff specifically alleged on November 21, 2023, she witnessed "favoring of a certain race and color of people, over the rest" and that "Leadership has all the grace to show people with same skin color as them, but none for anyone darker."

3.12.  Defendant's discriminatory treatment of plaintiff based on her race and color, including the denial of accommodations and escalating disciplinary actions, constituted unlawful discrimination in violation of Alaska Civil Rights Act AS 18.80.220(a).

## D.  VIOLATION OF ALASKA CIVIL RIGHTS ACT - GENDER AND NATIONAL ORIGIN DISCRIMINATION

3.13.  Plaintiff Ms. Grey, as a Samoan woman for whom English is a second language, was subjected to discrimination based on her gender and national origin throughout her employment.

3.14.  Defendant's treatment of plaintiff, including the denial of reasonable accommodations and disproportionate disciplinary actions, was based in part on her status as a female employee and her Samoan national origin.

3.15.  Such conduct constituted unlawful discrimination based on gender and national origin in violation of Alaska Civil Rights Act AS 18.80.220(a).

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE*

### E. RETALIATION IN VIOLATION OF ALASKA CIVIL RIGHTS ACT

3.16. Plaintiff Ms. Grey engaged in protected activity by requesting religious and disability accommodations and by filing complaints of discrimination based on race, color, religion, national origin, and gender on November 21, 2023.

3.17. Following plaintiff's protected activity, defendant subjected her to adverse employment actions including denial of accommodations, escalating disciplinary measures, schedule changes, suspension of overtime privileges, and ultimately termination.

3.18. Defendant's adverse actions were taken in retaliation for plaintiff's engagement in protected activity under Alaska Civil Rights Act, constituting unlawful retaliation in violation of AS 18.80.220(a).

### F. VIOLATION OF THE FAMILY MEDICAL LEAVE ACT (FMLA) OF 1993, 29 U.S.C. § 2601.:

3.19. Plaintiff Kayelani R. Grey incorporates by reference all facts and allegations contained in paragraphs 2.1 through 2.27 above.

3.20. At all relevant times, defendant State of Alaska Department of Health, Division of Public Assistance was a covered employer under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., employing fifty or more employees.

3.21. Plaintiff was an eligible employee under the FMLA, having been employed for more than twelve months and having worked at least 1,250 hours during the twelve-month period immediately preceding her leave request.

3.22. On February 12, 2024, plaintiff submitted a completed State of Alaska Application for Family Medical Leave (FMLA/AFLA) requesting intermittent leave for her own serious health condition that made her unable to perform essential functions of her job, which was acknowledged by supervisor Jessica Ceesay on the same date.

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE* PAGE - 9 -

3.23. Plaintiff's FMLA application specifically indicated she required intermittent leave due to a chronic medical condition that caused episodic incapacitation requiring accommodation approximately 7-10 days per month.

3.24. Plaintiff's serious health condition constituted a "chronic condition" under 29 C.F.R. § 825.115(c)(3), as it was episodic in nature, required periodic medical supervision, and caused incapacity that substantially limited her ability to perform essential job functions during flare-ups.

3.25. Plaintiff had previously provided medical documentation from Anchorage Women's Clinic dated October 25, 2023, establishing her diagnosis and need for workplace accommodations related to her medical condition, including requirements for frequent bathroom breaks and a patient-controlled stress environment.

3.26. Following plaintiff's FMLA application on February 12, 2024, defendant subjected plaintiff to immediate and escalating adverse employment actions, including a thirty (30) day suspension without pay effective March 7, 2024.

3.27. On March 8, 2024, defendant's Absence Management office denied plaintiff's FMLA request, stating "A Certification of Health Care Provider (CHCP) has not been received as requested," despite plaintiff's medical documentation and legitimate health condition.

3.28. Rather than engaging in the interactive process required under FMLA regulations, defendant immediately denied plaintiff's request without providing plaintiff adequate time to obtain the specific CHCP form or offering alternative medical documentation that plaintiff had already provided.

3.29. The temporal proximity between plaintiff's FMLA application (February 12, 2024), the thirty-day suspension (March 7, 2024), FMLA denial

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE*

PAGE - 10 -

(March 8, 2024), and ultimate termination (May 24, 2024) demonstrates a pattern of retaliation for plaintiff's exercise of FMLA rights.

3.30. Defendant's conduct violated 29 U.S.C. § 2615 and the DOL regulations at 29 C.F.R. § 825.220 by interfering with, restraining, and denying plaintiff's exercise of her FMLA rights, including by: A) Using plaintiff's FMLA request as a negative factor in employment decisions; B) Discouraging plaintiff from using FMLA leave through escalating discipline; and C) Creating procedural barriers to FMLA approval while simultaneously subjecting plaintiff to disciplinary action.

3.31. As a direct and proximate result of defendant's FMLA interference, plaintiff suffered damages including lost wages, lost benefits, emotional distress, and other compensable harm.

3.32. Defendant's conduct was willful and in bad faith, entitling plaintiff to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

## G. VIOLATION OF THE TORT OF WRONGFUL DISCHARGE

3.33. Plaintiff Ms. Grey was terminated from her employment in violation of Alaska public policy, including the public policies embodied in Alaska Civil Rights Act prohibiting discrimination and retaliation, and federal policies embodied in the FMLA.

3.34. Plaintiff's termination was wrongful as it was based on her protected characteristics of race, color, religion, national origin, gender, and disability, her exercise of FMLA rights, and in retaliation for her complaints of discrimination and requests for reasonable accommodations.

3.35. Defendant's conduct in terminating plaintiff constituted the tort of wrongful discharge under Alaska common law.

3.36. An implied covenant of good faith and fair dealing existed in the employment relationship between plaintiff and defendant.

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE*                    PAGE - 11 -

3.37. Defendant violated this covenant by failing to investigate plaintiff's discrimination complaints, denying reasonable accommodations without proper consideration, interfering with plaintiff's FMLA rights, subjecting plaintiff to escalating discipline based on her protected characteristics and protected activities, and ultimately terminating her employment in bad faith.

3.38. Defendant's conduct was willful, reckless, and in bad faith, constituting a violation of the implied covenant of good faith and fair dealing under Alaska law.

3.39. As a result of defendant's unlawful conduct, plaintiff has suffered damages including lost wages, lost benefits, emotional distress, and other damages to be proven at trial.

## IV. JURY DEMAND

4.1. Plaintiff, Kayelani R. Grey, hereby demands a trial by jury on all claims and issues.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Kayelani R. Grey, requests judgment against defendant State of Alaska, Department of Health, Division of Public Assistance, as follows:

**Alaska Civil Rights Act and State Law Claims:**

1. Full and complete payment of all damages permitted under the Alaska Civil Rights Act and Alaska common law related to plaintiff's claims against defendant, including but not limited to back pay from May 24, 2024, lost wages, lost benefits, emotional distress damages, punitive damages, attorney fees, prejudgment interest, and other permitted remedies, with the exact amount to be proven at trial.

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE*                    PAGE - 12 -

2. Plaintiff requests reinstatement to her position as Eligibility Technician I from which she was unlawfully terminated, or in the alternative, if the workplace has become impermissibly hostile, future damages going forward to her expected date of retirement.

3. Plaintiff Kayelani R. Grey seeks punitive damages based on the egregious nature of defendant's discriminatory and retaliatory conduct in violation of the Alaska Civil Rights Act and Alaska public policy.

**FMLA Interference Claim:**

4. Compensatory Damages under 29 U.S.C. § 2617(a)(1)(A)(I): A) Lost wages and salary from the date of interference (February 12, 2024) through the present, including but not limited to lost wages during the 30-day suspension period (March 8 - April 6, 2024) that was causally connected to her FMLA application and lost wages from termination (May 24, 2024) to present; B) Lost employment benefits, including health insurance premiums and coverage, retirement contributions and accruals, paid time off accruals, and other employment benefits that would have been earned; and C) Other compensation denied or lost as a result of defendant's FMLA interference

5. Interest under 29 U.S.C. § 2617(a)(1)(A)(ii): Prejudgment interest on all compensatory damages from the dates such damages were incurred

6. Liquidated Damages under 29 U.S.C. § 2617(a)(1)(A)(iii): An additional amount equal to the sum of compensatory damages and interest as liquidated damages, unless defendant proves that its violation of plaintiff's FMLA rights was in good faith and that defendant had reasonable grounds for believing that its conduct did not violate the FMLA

COMPLAINT FOR DAMAGES:
GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE                    PAGE - 13 -

7. Equitable Relief under 29 U.S.C. § 2617(a)(1)(B): A) Reinstatement to plaintiff's position as Eligibility Technician I or to an equivalent position with the same seniority, benefits, pay, and other terms and conditions of employment; B) Promotion to any position that plaintiff would have attained but for the FMLA interference; C) Expungement of disciplinary records related to the retaliatory actions following plaintiff's FMLA application; D) Injunctive relief requiring defendant to cease and desist from further FMLA violations, implement proper FMLA policies and training for supervisors, and post notice of FMLA rights and this Court's judgment.

8. Attorney's Fees and Costs under 29 U.S.C. § 2617(a)(3): Reasonable attorney's fees incurred in prosecuting this FMLA claim and court costs and litigation expenses

**General Relief:**

9. Plaintiff Kayelani R. Grey requests whatever additional damages and equitable relief the Court considers appropriate to award given the severity of defendant's conduct, including injunctive relief to prevent future discrimination and retaliation.

10. For such other relief as the Court deems just and proper.

Dated this 19th day of March 2026.

S/ Isaac Zorea
Law Offices of Isaac D Zorea
P.O. Box 90844
Anchorage, AK 99509
Telephone: (907) 830-1385
Facsimile: (800) 536-1071
E-mail: *izorea.law@gmail.com*

COMPLAINT FOR DAMAGES:
*GREY V. SOA, DIVISION OF PUBLIC ASSISTANCE*

PAGE - 14 -